**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **FREDERICK WEATHERSPOON,** | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | No. 3:04-CV-1644-BF (H) |
| | § | ECF (Pro Se) |
| **DALLAS COUNTY MEDICAL** | § | |
| **DEPARTMENT, et al.,** | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

This is a consent case before the United States Magistrate Judge. Defendants Dr. Kathryn Flangin ("Flangin") and Dr. Steven P. Bowers ("Bowers") filed a motion for summary judgment on March 31, 2006. Plaintiff filed a response on April 12, 2006. The Court has carefully considered the motion, the response, and the competent summary judgment evidence in the record.

Plaintiff was incarcerated in the Dallas County Jail ("Jail") from August 9, 2003, until he was transferred to the custody of the Texas Department of Criminal Justice Correctional Institutions Division ("TDCJ-CID") on November 14, 2005. Plaintiff remained at the Jail after he was convicted and sentenced to TDCJ-CID custody because his criminal conviction appeal was pending at the time. Accordingly, his stay at the Jail was longer than that of most inmates.

The University of Texas Medical Branch (UTMB) contracted with Dallas County to provide medical services at the Jail ("Contract"). Bowers and Flangin were employees of UTMB. Plaintiff sues Bowers and Flangin in their individual capacities.[1] Plaintiff alleges that Bowers injured him because, as Medical Director for the jail, he "failed to establish a policy to

---

[1] The Court previously granted judgment in favor of Bowers and Flangin in their official capacities based upon Eleventh Amendment Immunity.

pay for indigent inmates' prescription corrective lenses," denied him prescription corrective lenses, and was "deliberately indifferent in his formulation of rules and regulations or his direction of his personnel." (Pl.'s Am. Compl.) Plaintiff alleges that after he was examined by Dr. Witherspoon, the eye specialist at Parkland Hospital, Flangin "failed to follow through with Dr. Witherspoon's recommendations and prescription for corrective lenses on 10-26-04," and that she was "deliberately indifferent to his conditions as a blind inmate by refusing to listen to [his] plea for corrective lenses and medical attention despite her knowledge of [his] severe medical condition." (*Id*.) Plaintiff also alleges that Bowers was deliberately indifferent to his serious medical needs by failing: (1) to treat his foot condition, (2) to properly diagnose the tumor growing on his back, and (3) to properly treat the infection on his scalp. Plaintiff alleges that Flangin failed to follow through with her own diagnosis of the infection in his head. Plaintiff seeks $300,000 in damages from Bowers and Flangin.

Bowers and Flangin seek summary judgment on the grounds of qualified immunity and urge that Plaintiff has not raised a genuine issue of material fact regarding whether Bowers and Flangin were deliberately indifferent to Plaintiff's serious medical needs while he was under their care. They further claim that any actions they took were taken in the good faith performance of their official duties, and thus, they did not violate any of Plaintiff's clearly established constitutional rights of which a reasonable person would have known. Bowers also point to the lack of evidence in the record to show that he maintained or failed to provide a policy that caused a violation of Plaintiff's constitutional rights.

Plaintiff makes the conclusory allegations that:(1) that he is "legally blind," and (2) two prescriptions for eyeglasses create a genuine issue of material fact exists with respect to whether

2

Plaintiff lost a significant amount of vision as a result of Defendants' failure to provide him with corrective lenses. Plaintiff also makes the conclusory allegation that corrective lenses are used "to stop deteriorating vision." He also alleges that, as a "legally blind" inmate, he should have been housed in protective custody during his stay at the Jail to avoid a serious risk of harm. Additionally, Plaintiff alleges that for five months he suffered from "bleeding open sores in his head," and that for eleven months he suffered from walking in a defective shoe.[2]

.            **Summary Judgment Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "material fact" is one that "might affect" the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). A "genuine" issue is "real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489. Accordingly, a genuine issue of material fact is present if the jury could potentially find for the non-moving party. *Liberty Lobby*, 477 U.S. at 248; *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001).

---

[2] Plaintiff also alleges that the medical care provided by the Dallas County Defendants was under investigation while he was confined there and resulted in Dallas County contracting with a new provider. He claims this investigation and its result are proof that he received inadequate care. It is true that an investigation was conducted into the medical care at the Jail and that the Jail changed providers. Nevertheless, Plaintiff has failed to show any connection between the investigation and his own medical care. Plaintiff's own medical records reflect the care that he received.

Once a party has made a proper motion for summary judgment, the court reviews the record as a whole in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).

Since Plaintiff in this case is proceeding *pro se*, the Court must construe the allegations in the complaint liberally. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam); *Sec. & Exch. Comm'n v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam). The Court has an obligation to construe *pro se* plaintiffs' briefs more permissively and to make more allowances. *AMX, Int'l, Inc.*, 7 F.3d at 75. "[P]*ro se* litigant[s] [are] subject to less stringent standards than [those] represented by counsel." *Id.* (citing *Hughes v. Rowe*, 449 U.S. at 9).

**Failure to Exhaust Administrative Remedies as Required by 42 U.S.C. § 1997(e)(a)**

The Court will first consider whether Plaintiff's Amended Complaint should be dismissed without prejudice for failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This section applies to all prisoners who file suit for redress for prison circumstances or occurrences. *Porter v. Nussle*, 534 U.S. 516, 520 (2002). It is mandatory that a prisoner exhaust his administrative remedies by completing the grievance process before filing suit under 42 U.S.C. § 1983 or other federal law. *Booth v. Churner*, 532 U.S. 731, 739 (2001); *Days v.*

4

*Johnson*, 322 F.3d 863, 866 (5th Cir. 2003); *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001). Even a prisoner who seeks only money damages is required to comply with this statute. *Booth*, 532 U.S. at 741. Further, a prisoner must exhaust his administrative remedies *before* he files suit. *Wendell v. Asher*, 162 F.3d 887, 889 (5th Cir. 1998). Nevertheless, the exhaustion requirement imposed by §1997e(a) is not jurisdictional and is subject to the defenses of waiver, estoppel, or equitable tolling. *Underwood v. Wilson*, 151 F.3d 292, 293-95 (5th Cir. 1998).

The Jail currently provides a two-step procedure for presenting inmate grievances. *Burnett v. Robertson,* 3:01-CV-1284-P, 2001 WL 1577495 (N.D. Tex. Dec. 7, 2001)(adopting the recommendation of the magistrate judge). The first step requires the prisoner to submit a grievance to any staff member. *Id*. After noting the date and time the grievance is received, the staff member must forward the grievance to the on-duty shift supervisor, who will in turn forward it to the Grievance Board for review. *Id*. After review and an investigation, if necessary, the Grievance Board will issue a written decision. *Id*.

The inmate has five days after he receives the written decision of the Grievance Board to submit a written appeal to the Inmate Grievance Appeal Board. *Id*. The Appeal Board then reviews all documents submitted in connection with the appeal and issues a decision, which may be reviewed by the Sheriff. *Id*.

Flangin and Bowers sought judgment on the pleadings based upon Plaintiff's failure to exhaust his administrative remedies. Plaintiff responded that "Grievances No.'s 42156, 43293, 43266, and 42857 concerning his medical condition had not been answered." This Court was required to take Plaintiff's allegation as true for purposes of the motion for judgment on the

pleadings. Therefore, at that nascent stage of the proceedings, this Court declined to dismiss the Amended Complaint for failure to exhaust administrative remedies. With the record of Plaintiff's grievances before the Court and Plaintiff's apparent misrepresentation in response to Bowers and Flangin's Motion for Judgment on the Pleadings, the Court now reconsiders that issue.

None of the four grievances Plaintiff relied upon to defeat judgment on the pleadings concerned the medical conditions about which he complains, namely, his eye condition, his scalp condition, a "tumor" on his back," or a knot on his toe.[3] Additionally, the grievances were answered, and Plaintiff failed to appeal to the Inmate Grievance Appeal Board. In other words, Plaintiff completed only the first step of the grievance procedure with respect to the grievances he filed and completely failed to file any grievances with respect to some of his claims.

### Failure to File Grievances Regarding a "Tumor" and a Foot Problem

Plaintiff claims his medical treatment for a "tumor" on his back and a knot (requiring an orthopedic shoe) violated his constitutional rights. None of the twenty-two grievances Plaintiff filed concerned either of these medical conditions. Plaintiff has not raised the defenses of waiver, estoppel, or equitable tolling. Further he has not shown that he was prevented from

---

[3] In Grievance No. 042156, filed on May 20, 2004, Plaintiff complained that he needed an extra blanket to use as a prayer rug. (Defs.' App. ("App.") at 349.) Contrary to Plaintiff's allegation, the Director of Inmate Programs for the Housing Division ("Director") answered this grievance on May 21, 2004. (*Id*. at 350.) Grievance No. 043293, filed on August 10, 2004, concerned Plaintiff's paperwork enabling him to proceed *in forma pauperis* in this Court. (*Id*. at 374-75.) The Director responded on August 12, 2004. (*Id*. at 376.) Grievance No. 043266, also filed on August 8, 2004, was a complaint about religious services which was answered on August 22, and 27. (*Id*. at 369-373.) Finally, Grievance No. 042857, filed July 7, 2004, concerned Plaintiff's legal mail and was answered on July 17, 2004. (*Id*. at 372-359.)

filing grievances regarding these two medical conditions. Accordingly, Plaintiff's claims regarding the "tumor" and regarding his foot problem are dismissed with prejudice.[4] The Court will not consider these two claims on the merits because Plaintiff did not even attempt to exhaust his administrative remedies with respect to these two claims and has offered no excuse for his failure in this regard.

### Unexcused Late and Incomplete Grievances Regarding Eye and Scalp Conditions

Two days before he filed this lawsuit and eleven and one-half months after he his eyeglasses were broken, Plaintiff filed Grievance No. 43102, complaining that he: (1) had a serious eye problem, (2) had glaucoma and cataracts, (3) needed eye medical attention, (4) was starting to see spots, and (5) needed professional optical help. He contended that the medical department refused to send him to an eye doctor. (App. at 365.) After this lawsuit was already on file, the Medical Department received the Grievance. The staff response states that "this inmate has been referred to the provider for a follow-up in reference to [his] eye complaint." (*Id*.) The grievance and response were forwarded to the Inmate Grievance Committee which further investigated the complaint and determined that Plaintiff was scheduled for an appointment with the provider for a follow-up in reference to his eye complaint. (*Id*. at 367.) Plaintiff did not appeal the response to the Inmate Grievance Appeal Board, as required by the Jail's two-step grievance procedure.

---

[4] Plaintiff had more than an adequate amount of time to exhaust his administrative remedies before his transfer to TDCJ-CID, and he has provided no acceptable excuse for failing to do so. Because the time in which to pursue administrative remedies has long since expired, it is proper to dismiss these claims with prejudice. *See Marsh v. Jones,* 53 F.3d 707 (5th Cir.1995).

Two to three months after Plaintiff initiated this lawsuit, he filed two grievances about his scalp condition.[5] The medical department and the Grievance Committee both responded to the grievances. Again, Plaintiff did not appeal either grievance. Accordingly, he failed to exhaust his administrative remedies with respect to his scalp condition.

Plaintiff has not raised the defenses of waiver, estoppel, or equitable tolling or provided any excuse for filing late and incomplete grievances with respect to his eye and scalp conditions. Filing a Step One grievance and then failing to pursue the grievance remedy to conclusion does not satisfy the exhaustion requirement because "substantial compliance" is not contemplated under the PLRA's exhaustion requirement. *Wright*, 260 F.3d at 357-8. The Court finds that Plaintiff's claims regarding his eye and scalp conditions should be dismissed with prejudice. 42 U.S.C. § 1997e(a); *Marsh*, 53 F.3d at 707.

However, Bowers and Flangin have raised the defense of qualified immunity and addressed the merits of Plaintiff's claims. Since Plaintiff did not even attempt to file grievances with respect to his "tumor" and foot condition, the Court finds no reason to address those claims on the merits. However, with respect to Plaintiff's claims regarding his eye and scalp conditions, the Court will decide alternatively whether the Bowers and Flangin are entitled to summary judgment on Plaintiff's claims that their treatment of his eye and scalp conditions violated his civil rights under 42 U.S.C. § 1983.

## Arguments and Analysis

---

[5] Plaintiff filed Grievance No. 54024 on September 23, 2005, complaining of sores in his head. (App. at 411.) The first step response was that he was set up to see a provider. (*Id*. at 412.) Plaintiff filed Grievance No. 54452, complaining of his scalp and toenail conditions. (*Id*. at 413.) The first step response was that he had been seen by the provider and that his scalp condition was chronic. (*Id*. at 413.)

Plaintiff alleges that pursuant to a policy, Bowers denied him prescription eye glasses for two years. He makes the conclusory allegation that the delay made his eyesight worse. Plaintiff also alleges that the Flangin failed to follow up on Dr. Witherspoon's prescription for eye glasses. Plaintiff alleges that Bowers and Flangin denied him proper medical care for a scalp condition. He alleges that Bowers and Flangin were deliberately indifferent to his serious medical needs and that he suffered substantial injuries as a result of their deliberate indifference and their delay in treating his scalp condition and providing him prescription eyeglasses.

Bowers and Flangin contend that Plaintiff's claims against them are barred by the doctrine of qualified immunity. They further claim that any actions they took were taken in the good faith performance of their official duties, and thus, they did not violate any of Plaintiff's clearly established constitutional rights of which a reasonable person would have known.

### **Undisputed Material Facts**

1. Plaintiff is a resident of Texas.

2. Dallas County is a governmental entity organized and existing under the laws of the State of Texas.

3. The Jail is a detention facility for criminal offenders and is organized under Texas law and operated by Dallas County.

4. On August 9, 2003, Dallas police officers arrested Plaintiff, and during the scuffle that ensued, Plaintiff's prescription eyeglasses were broken beyond repair.

5. The officers booked Plaintiff into the Jail on a charge of Burglary and he was subsequently charged with: (1) Theft of Services, (2) Possession of Drug Paraphernalia (two charges), (3) Failure to Appear (two charges), and (4) Theft. On November 21, 2003, Plaintiff was convicted of Burglary and sentenced to seven years confinement in TDCJ-CID. (Defs.' App.[6] at 275-76, 311-14.)

---

[6] The Court refers to the Dallas County Defendants' Appendix as Defs. App. and to Flangin and Bowers Appendix as UTMB App.

6. Plaintiff had sustained several head and facial injuries before his August 9, 2003 intake into the Jail and, in connection with those incidents, had complained of pain in his left eye, blurred vision, sleepiness, dizziness, "seeing double" and being "legally blind." (Defs.' App. at 238-242, 243-44.)

7. At all times material to this action, Plaintiff was lawfully confined as an inmate in the Jail. After his conviction, Plaintiff was in the custody of TDCJ-CID (the state) while his conviction was on appeal, even though he remained in the physical custody of the Jail until November 14, 2005.

8. The Jail provided extensive medical and psychiatric treatment to Plaintiff between August 9, 2003, and November 14, 2005, when he was transferred to a TDCJ-CID correctional facility. (Plaintiff's Jail medical records are Defs.' App. at 1-237 and Parkland Memorial Hospital's ("Parkland") records are Defs.' App. at 238-245.)

9. Doctors, nurses, and specialists examined and treated Plaintiff regularly for his paranoid schizophrenia and schizoaffective disorder, as well as for various complaints such as sores on his scalp, a fatty tumor on his shoulder, foot pain, and eye problems. (Defs.' App. at 1-237.)

10. With respect to Plaintiff's scalp condition, on May 13, 2005, Dr. Flangin diagnosed Plaintiff as having folliculities of the scalp and provided him with an antibiotic and shampoo. (UTMB App., Exh. A, p. 5.) The condition was diagnosed as chronic.

11 On April 16, 2004, Plaintiff complained during a psychological examination that he was seeing black spots, but he thought he might be hallucinating. On May 30, 2004, August 28, 2004, Plaintiff sent kites regarding his eyesight and these kites were reviewed by the prison nurses and doctors. On August 2, 2004, Dr. Reid considered whether to refer Plaintiff for an ophthalmology examination. On September 7, 2004, Kathryn Flangin, M.D. examined Plaintiff's eyesight and scheduled him for an eye examination by a specialist at Parkland. (Defs.' App. at 7, 26, 39, 41, 55, 127.)

12. On October 9, 2004, Plaintiff sent another kite regarding his eyesight. The nurse noted that the examination was already scheduled. On October 26, 2004, Plaintiff was sent to Parkland for his previously scheduled appointment. The ophthalmologist found that the intraocular pressure ("IOP") in both of Plaintiff's eyes was within the normal range limit and prescribed eyeglasses. Plaintiff complained again of eye problems on December 24, 2004, and was scheduled to see a nurse. (Defs.' App. at 33, 38, 163.)

13. UTMB contracted with Dallas County to provide medical services at the Jail ("Contract"). (UTMB App., Exh. A, Aff. of Bowers.) UTMB's contractual obligation is defined by the Interlocal Agreement to Provide Medical Services between the University of Texas Medical Branch at Galveston and Parkland Health and Hospital System, a Part of the Dallas County Hospital District, on Behalf of Dallas County. *(Id.* at p. 2, 11.) Policies established by UTMB, Standards for Adult Correction Institutions, and the Contract govern the medical treatment of inmates at the Jail. (*Id.*)

14. Under the Contract, outside care providers provide specialty services, such as optometry services, ophthalmology services, and the provision of corrective lenses. (*Id.* at 3, 29.) Pursuant to UTMB's "Optical Prostheses and Appliances" policy, inmates were not entitled to receive corrective lenses at UTMB's expense unless UTMB was responsible for the loss. (Exh. A., p. 3, 31.) Under the policy, glasses were to be provided by family members or friends of the inmate. (*Id.*)

15. On August 2, 2005, Dr. Flangin checked to see if Plaintiff had a follow-up eye appointment scheduled at Parkland. On August 11, 2005, Dr. Mills referred Plaintiff to Parkland for a follow-up. UTMB made an exception to the policy and issued Plaintiff prescription lenses on August 17, 2005, at no expense to Plaintiff or his family or friends. (*Id.*) Plaintiff's visual acuity without glasses was 20/200, while his visual acuity with glasses was 20/25. (Defs.' App. at 167-68, 176, Pl.'s Ex. BB-1.)

16. On August 29, 2005, Jail medical personnel returned Plaintiff to Parkland for a follow-up appointment with the ophthalmologist. The IOP was again within normal limits and Plaintiff was scheduled for a follow-up appointment on January 17, 2006. On September 1, 2005, Jail doctors reviewed Plaintiff's paperwork from the August 29, 2005 appointment at Parkland. (Defs.' App. 33, 176.)

17. On September 7, 2005, Dr. Bowers told Dr. Mills to follow up on Plaintiff's ophthalmology appointment and let him know if Plaintiff was given a new prescription. (Defs.' App. 184.) On November 14, 2005, Plaintiff was transferred to TDCJ-CID.

18. On January 17, Plaintiff was examined by Dr. Wei-Chauan Wang, a physician in the Ophthalmology Department of UTMB. Dr. Wang's diagnosis was "glaucoma suspect" due to Plaintiff's family history of glaucoma, past trauma to his eye, and increased cup and disc ratio. No treatment was necessary because Plaintiff's IOP was in the normal range. Dr. Wang stated that Plaintiff's claim of black spots and constant pain in his eyes was not supported by his examination due to no evidence of ocular inflammation, trauma, or infection. Based upon that examination and a review of Plaintiff's medical records, Dr. Wang concluded that no medical evidence supported Plaintiff's claim that he had sustained damage or deterioration

11

        as a result of the length of time it took for him to receive prescription eyeglasses. (Aff. of Wei-Chuan Wang, M.D. ("Wang Aff."); Pl.'s Ex. AA 2.)

19. Corrective lenses are not a treatment for glaucoma. (Wang Aff.)

20. No evidence of ocular inflammation, trauma, or infection exists to account for Plaintiff's complaints of black spots and constant pain in his eyes. (*Id.*)

21. Plaintiff's medical records reflect that he did not suffer an injury as a result of not wearing prescription glasses between October 26, 2004 and August 17, 2005. (*Id.*)

22. On several occasions, Plaintiff refused medical care when the medical staff at the Jail offered it to him. (Defs.' App. at 3, 139-44, 191, and 193).

23. Plaintiff attended the West Tower law library from October 24, 2003 through March 2, 2005 and March 9, 2005 through August 1, 2005 approximately fifty-four times during his confinement in the Jail, and according to the officer in charge of the law library did not require assistance from the officers or other inmates. (Def.'s App. at 302-10.) Plaintiff located and utilized books in the library, checked out several general circulation books at a time, and read continuously with exhibiting any difficulty in doing so. (*Id.*) Additionally, Plaintiff subscribed to at least five magazines and participated in recreational activities. (*Id.* at 273, 295-301.)

24. With respect to Plaintiff's housing in the Jail, the Jail assigned Plaintiff to the West Tower. (Defs.' App. at 272.) Bowers and Flangin had nothing to do with the housing assignment. (UTMB App., Exh. A, p. 5.)

## **Civil Rights Violation**

Under 42 U.S.C. § 1983, a plaintiff may bring a suit for damages for violation of his constitutional rights against government agents acting "under color of state law." *See* 42 U.S.C. § 1983. The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Additionally, the plaintiff must show that jail officials acted (or failed to act) with deliberate indifference to that risk. *Id*. The

12

deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the jail officials were actually aware of the risk, yet consciously disregarded it. *Id.* at 837, 839.

A supervisory official or entity cannot be held vicariously liable for a subordinate's actions under § 1983. *Monell*, 436 U.S. at 693; *Bigford v. Taylor,* 834 F.2d 1213, 1220 (5th Cir. 1988); *Thibodeaux v. Arceneaux,* 768 F.2d 737, 739 (5th Cir. 1985) (per curiam). A defendant's personal involvement is an essential element of a civil rights cause of action. *See Rizzo v. Goode,* 423 U.S. 362, 371-72, 377 (1976); *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). For liability to attach under § 1983, supervisory officials must (a) affirmatively participate in acts that cause a constitutional deprivation or (b) implement unconstitutional policies that causally result in the plaintiff's injury. *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987); *see also Grandstaff v. City of Borger*, 767 F.2d 161, 169-70 (5th Cir. 1985).

Finally, a plaintiff must show more than a *de minimis* injury. 42 U.S.C. § 1997e (e); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

### The Qualified Immunity Defense of Bowers and Flangin

Bowers and Flangin claim judgment as a matter of law based upon qualified immunity. The Court addresses the question of qualified immunity first because its resolution determines a defendant's immunity from suit, that is, his ability to avoid a trial altogether, rather than mere immunity from damages. *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). Government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Trial courts should first determine whether violation of a constitutional right has

13

occurred and then address whether a defendant is entitled to qualified immunity. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276-78 (5th Cir. 1992).

Neither Bowers nor Flangin will have the burden of proof on Plaintiff's claims. Therefore, they can meet their summary judgment obligation by pointing the court to the absence of evidence to support Plaintiff's claims against them. *See Celotex,* 477 U.S. at 325. If they succeed, Plaintiff must go beyond his pleadings and designate specific facts showing that there is a genuine issue for trial. *See id.* at 324; *Little*, 37 F.3d at 1075. Summary judgment is mandatory when the nonmoving party fails to meet this burden. *Id.*

### Plaintiff's Scalp Problems

An inmate's disagreement with the type of medical treatment that he receives cannot support a claim under § 1983. *See Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997). Even though inadequate treatment "may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999). To show deliberate indifference, a plaintiff must demonstrate that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Crim. Justice,* 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson,* 759 F.2d at 1238).

With respect to Plaintiff's scalp condition, on May 13, 2005, Dr. Flangin diagnosed Plaintiff as having folliculities of the scalp and provided him with an antibiotic and shampoo. (UTMB App., Exh. A, p. 5.) The condition was diagnosed as chronic. (*Id*.) Plaintiff received treatment numerous times for his scalp condition and has not submitted any evidence that prison

officials refused to treat his scalp condition.  Moreover, he does not show proof that they intentionally treated him incorrectly or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  At most, Plaintiff claims that the doctors have incorrectly diagnosed his scalp condition or that their treatment has been unsuccessful.  This is not sufficient to establish a genuine fact issue as to whether an Eighth Amendment violation occurred.  *Johnson v. Treen*, 759 F.2d 1236, 1238-39 (5th Cir. 1985).

Plaintiff's complaint that at times he had open sores in his scalp does not demonstrate the prison officials' deliberate indifference to his serious medical needs.  Rather, it shows that the treatment prescribed was not successful in controlling his chronic scalp condition.

### **Plaintiff's Vision Problems**

The denial of eyeglasses by prison officials can, under some circumstances, cause serious harm to a prisoner and constitute an Eighth Amendment violation.  *See Newman v. Alabama*, 503 F.2d 1320, 1331 (5th Cir. 1974), *award of attorneys' fees vacated*, 522 F.2d 71 (5th Cir. 1975) (a state correctional institution is required to provide inmates with eyeglasses and prosthetic devices).[7]  However, in most cases involving county jails, courts have not required counties to provide inmates with prosthetic devices such as eyeglasses or dentures because county jails

---

[7] Whether a deprivation of eyeglasses constitutes deliberate indifference to serious medical needs depends on the facts and circumstances of the particular case and the degree of visual impairment suffered by the prisoner. *Id*.  An inmate with visual acuity of 20/400 and who requires eyeglasses to work or to function in the general prison population has a serious medical condition.  *See Benter v. Peck,* 825 F. Supp. 1411, 1416-17 (S.D. Iowa 1993).  A prisoner's alleged medical need for prescribed eyeglasses to avoid double vision and loss of depth perception that resulted from previous head injury was sufficiently serious to support his claim that prison officials' deprivation of eyeglasses violated the Eighth Amendment.  *See Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir. 1996).

usually hold inmates for a relatively short period of time. *Swaissi v. Cotten*, No. 3:01-CV-1607-D, 2002 WL 492905, at *2 (N.D. Tex. Mar. 28, 2002) (nearsightedness causing inmate difficulty reading, writing, and watching television was not a serious medical need); *Glass v. Orleans Parish Criminal Sheriff*, No. Civ. A. 04-3353, 2005 WL 1501019 at *3-4 (E.D. La. 2005)(Shushan, J.)(granting summary judgment in favor of sheriff on inmate's claim that the sheriff's refusal to provide plaintiff with prescription eyeglasses constitutes deliberate indifference to a serious medical need in violation of the United States Constitution); *Nicholson v. Choctaw County, Alabama*, 498 F. Supp. 295, 308 (S.D. Ala. 1980) (holding that counties do not provide eyeglasses and dentures to citizens in general, and a person who is convicted of a criminal offense does not gain a greater right to services or benefits by virtue of the conviction); *Di Febo v. Keve*, 395 F. Supp. 1350 (D.C. Del. 1975) (an inmate's complaint alleging injury to his vision due to official's failure to replace his broken glasses sounded in ordinary negligence which did not amount to denial of constitutional or federally protected right which could be redressed under Civil Rights Act).

  Plaintiff was receiving almost constant medical attention for his mental problems. (App. at 1-238.) Bowers sent Plaintiff to be examined by eye specialists on three different occasions. Bowers and Flangin were obligated to follow UTMB policy not to provide Plaintiff with prescription lenses until August of 2005, when UTMB made an exception that allowed them to provide him with corrective lenses. (Bowers' Aff. at 3.)

  A delay in necessary treatment can establish deliberate indifference, but only if "verifying medical evidence" exists to show how the delay adversely affected a patient's condition. *Langston v. Peters,* 100 F.3d 1235, 1240 (7th Cir.1996) (emphasis and internal

16

quotation omitted).

The evidence shows that Plaintiff functioned reasonably well before he obtained his prescription eyeglasses. He subscribed to five magazines, participated in the inmate recreation opportunities, watched television and took full advantage of the Jail law library and general circulation reading materials. He prepared a *pro se* appeal of his conviction, filed five *pro se* federal civil rights suits, and submitted voluminous pleadings.

Bowers and Flangin have directed the Court to an absence of evidence to support Plaintiff's claims. Defendants have shifted the burden to Plaintiff to adduce specific facts showing a genuine issue for trial. *See Celotex,* 477 U.S. at 323-24. Plaintiff makes the conclusory allegations that: (1) he is legally blind (although he does not meet the legal definition of legal blindness)[8] and (2) the fact that he was given a prescription for stronger lenses proves that his eyesight deteriorated from not wearing eyeglasses. Plaintiff points to an allegedly stronger prescription upon his return to Parkland. Plaintiff offers no summary judgment evidence to support the allegation that the lack of prescription lenses cause his eye sight to deteriorate. Although a *pro se* plaintiff receives more lenience, "[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) (per curiam). A party

---

[8] In his pleadings, Plaintiff misrepresents the Social Security Definition of legal blindness. (Pl.'s Resp., Apr. 12, 2006, at 4.) The Social Security Act defines blindness as "central visual acuity of 20/200 or less in the better eye *with the use of a correcting lens*." 42 U.S.C.A. § 416(i)(1) [emphasis supplied]. "Blindness is defined by law: in most states of the United States, maximal visual acuity of the better eye, *after correction*, of 20/200 or less, with a total diameter of the visual field in that eye of 20 degrees or less." *Dorland's Illustrated Medical Dictionary*, 29th Ed., (W. B. Saunders Co. 2000) p. 220 [emphasis supplied.]. It is undisputed that Plaintiff has visual acuity of 20/200 without the use of correcting lenses and 20/25 with the use of correcting lenses.

17

opposing summary judgment cannot establish a genuine issue of material fact by resting upon allegations alone. *Hulsey v. State*, 929 F.2d 168, 170 (5th Cir. 1991); *Russell v. Harrison*, 736 F.2d 283, 287 (5th Cir. 1984). The Court, therefore, concludes that Plaintiff has not produced sufficient evidence to demonstrate that a genuine issue of material fact exists as to whether a causal connection exists between a difference in his prescriptions and the delay in providing him with corrective lenses. Only a doctor would be qualified to testify to such a causal connection, if one existed. Plaintiff's conclusory allegation in this regard is not sufficient to raise a genuine issue of material fact, particularly in light of Dr. Wang's testimony that "based on [his] review of [Plaintiff's] medical record and medical examination, [he] finds no medical evidence that [Plaintiff] has sustained damage or deterioration to him as a result of the length of time in providing him with prescription glasses." (Wang Aff. 2.) Plaintiff presents no evidence to rebut this medical opinion. Based upon the record, a jury could not find in Plaintiff's favor on this issue.

Additionally, Plaintiff failed to point the Court to any competent summary judgment evidence indicating that Bowers or Flangin acted objectively unreasonably in following UTMB policy with respect to prescription eye glasses until the exception was granted in August of 2005. Finally, Plaintiff failed to offer competent summary judgment evidence that Bowers or Flangin implemented an unconstitutional policy which an objectively reasonable official would have recognized as unconstitutional. The Court finds that an objectively reasonable official considering the law as it existed at the time would not have believed that he was violating Plaintiff's constitutional rights by failing to provide Plaintiff with prescription eyeglasses at UTMB's expense. Although Plaintiff could not see very far without prescription eyeglasses, the

18

distances within the Jail are not vast, and Plaintiff functioned relatively well, given his severe mental health problems.

Plaintiff has not shown that Bowers or Flangin were deliberately indifferent to Plaintiff's serious medical needs. Deliberate indifference requires actual knowledge and conscious disregard of the risk of harm to the plaintiff. *Farmer,* 511 U.S. at 834. Deliberate indifference cannot be inferred from a prison official's mere failure to act reasonably, i.e., it cannot be inferred from negligence alone. *Hare*, 74 F.3d at 649. The competent summary judgment evidence does not show that Bowers or Flangin had actual knowledge of a serious risk to Plaintiff's health but consciously disregarded that risk. Moreover, the evidence shows that Plaintiff received specialty eye care at Parkland three times and that UTMB made an exception to their general policy and furnished Plaintiff with prescription eyeglasses. Bowers and Flangin acted in good faith at all times relevant to this action, and they are entitled to judgment as a matter of law based upon qualified immunity.

Additionally, although the Court need not reach the issue of Plaintiff's damages in light of Bowers' and Flangin's entitlement to qualified immunity, the Court notes that Plaintiff has not adduced competent summary judgment evidence that he suffered more than a *de minimis* injury as a result of any acts or omissions attributable to Bowers or Flangin.

### Claim Regarding Protective Housing

Plaintiff's unsupported and conclusory allegation that he is a legally blind inmate who should have been in protective custody fails to state a claim against Bowers and Flangin who had nothing to do with his housing assignment.

**Conclusion**

The Motion for Summary Judgment filed by Bowers and Flangin on March 31, 2006, is **GRANTED**. All other pending motions are **DENIED**. Plaintiff's claims against Bowers and Flangin are dismissed with prejudice for failure to comply with the terms of 42 U.S.C. § 1997e(a). Alternatively, Plaintiff's claims against Bowers and Flangin are barred by official and qualified immunity.

Signed May 9, 2006.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE